**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **ANNA HALL,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MARKETEAM, LLC,**<br><br>**Defendant.** | **CIVIL ACTION FILE**<br><br>**NO. 1:25-CV-742-MHC** |

**<u>ORDER</u>**

This case comes before the Court on Plaintiff's Renewed Motion for Partial Summary Judgment [Doc. 32] and Defendant's Motion for Summary Judgment [Doc. 34].

## I. BACKGROUND[1]

The present case arises from Defendant's alleged breach of an employment agreement it had with Plaintiff by requiring Plaintiff to work more than agreed

[1] At the outset, the Court notes that as this case is before it on the parties' cross-motions for summary judgment, the Court views the evidence presented by the parties in the light most favorable to the non-movant and has drawn all justifiable inferences in favor of the non-movant. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Sunbeam TV Corp. v. Nielsen Media Rsch., Inc.</u>, 711 F.3d 1264, 1270 (11th Cir. 2013). In addition, the Court has excluded assertions of facts that are immaterial or presented as arguments or legal conclusions or any fact not supported by citation to evidence (including page or

upon hours and the subsequent alleged unlawful termination of Plaintiff based on her age. Am. Compl. for Damages ("Am. Compl.") [Doc. 4] ¶¶ 1-3. Plaintiff was employed as a Senior Production Manager, a salaried position with Defendant's Production Services Department from October of 1999 until December 31, 2023. Def.'s Resp. to Pl.'s SUMF ¶ 1; Pl.'s Resp. to Def.'s SMF ¶¶ 1, 3; Dep. Tr. of Anna Hall (July 17, 2025) ("Hall Dep.") [Doc. 35-1] at 17. At some point prior to January 29, 2018, Plaintiff and her supervisor Jon Cohen ("Cohen") reached a verbal agreement whereby Plaintiff would work four days per week at a 20% reduction in salary, and she was entitled to retain her health benefits.[2] Def.'s Resp. to Pl.'s SUMF ¶ 2; Pl.'s Resp. to Def.'s SMF ¶ 6; Decl. of Anna Hall (Feb. 25, 2025) ("Hall Decl.") [Doc. 33-1] ¶ 7 ("[M]y boss, Jon Cohen, verbally offered that my working agreement with MarkeTeam would be at a 20% pay reduction and a 4-

---

paragraph number). LR 56.1B(1), NDGa. Further, the Court accepts as admitted those facts in Defendant's Statement of Material Facts ("Def.'s SMF") [Doc. 34-2], Plaintiff's Statement of Undisputed Material Facts ("Pl.'s SUMF") [Doc. 33], Plaintiff's Additional Material Facts ("Pl.'s AMF") [Doc. 41 at 1-6], that have not been controverted with specific citations to the relevant portions of the record. See LR 56.1B(2), (3), NDGa.; Def.'s Resp. to Pl.'s SUMF [Doc. 37]; Pl.'s Resp. to Def.'s. SMF [Doc. 41]; Def.'s Resp. to Pl.'s AMF [Doc. 44].

[2] Plaintiff testified she was "unsure" of the exact date she and Cohen reached their verbal agreement and "[did] not recall" if it was ever reduced to writing. Hall Dep. at 32, 37.

day workweek, and I accepted the 20% and 4-day work week offer."); Hall Dep. at 35-36. Neither Plaintiff nor Cohen placed any time limitation on this verbal agreement. Pl.'s Resp. to Def.'s SMF ¶ 8; Hall Dep. at 37.

On January 29, 2018, Plaintiff sent an email to Ron Bell ("Bell"), Defendant's Managing Partner and Founder, that said:

> So it was agreed upon that I will take a 20% pay cut and have 1 day a week off and that day cannot be every Friday.
>
> Am I still allowed 1 day a week work from home, where it was 2?

Email from Anna Hall to Ron Bell (Jan. 29, 2018) [Doc 33-2 at 6-7]. Bell responded the same day: "I think that you should discuss this with Jon and Brian – once again, trying not to be involved in every decision in the company . . . ." Id.

Despite the oral agreement reducing Plaintiff's workweek from five to four days and a concomitant 20% cut in pay, Plaintiff contends that she still "worked five days per week from January 2018 to December 2023." Pl.'s AMF ¶ 2. Consequently, Plaintiff contends that she is owed "$194,523.22 for the additional day she worked each week, from February 2018 through December 2023." Pl.'s SUMF ¶ 12.[3]

---

[3] The Court notes that there is an inconsistency in Plaintiff's contentions. In her Statement of Material Facts, Plaintiff contends she worked five days a week from February 2018 through December 2023. Id. In Plaintiff's statement of Additional

It is undisputed that Defendant notified Plaintiff on December 11, 2023, that she would be terminated and her last day working was December 31, 2023. Pl.'s Resp. to Def.'s. SMF ¶¶ 12-13. All of the employees in Plaintiff's department who were 50-years-old and older were terminated on the same day as Plaintiff. Def.'s Resp. to Pl.'s SUMF ¶ 13; Def.'s Resp. to Pl.'s AMF ¶ 5.

Based on these allegations, Plaintiff filed a complaint in the Superior Court of Fulton County, which she later amended on January 14, 2025, to assert the following four causes of action: breach of contract (Count I); quantum meruit (Count II); unjust enrichment (Count III); and discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA") (Count IV).[4] See generally Am. Compl. Defendant removed the case to this Court on February 13, 2025, based on Plaintiff's assertion of a federal claim under the ADEA in her Amended Complaint. Notice of Removal [Doc. 1] ¶ 6.

---

Material Facts, Plaintiff contends that she worked five days a week from January 2018 through December 2023. Pl.'s AMF ¶ 2.

[4] Plaintiff's claim under the Georgia Age Discrimination Act, O.C.G.A. § 34-1-2, was dismissed by Order dated April 16, 2025 [Doc. 19].

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and cannot be made by the district court in considering whether to grant summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).

If a movant meets its burden, the party opposing summary judgment must present evidence demonstrating a genuine issue of material fact or that the movant is not entitled to judgment as a matter of law. Celotex, 477 U.S. at 324. In determining whether a genuine issue of material fact exists, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that opposing party. Anderson, 477 U.S. at 255; see also Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th

Cir. 1999). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. Anderson, 477 U.S. at 248. A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Id. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita, 475 U.S. at 587.

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether [any] of the parties deserves judgment as a matter of law on the facts that are not disputed." Klim v. DS Servs., Inc., 225 F. Supp. 3d 1373, 1376 (N.D. Ga. 2015) (citing Am. Bankers Ins. Grp. v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005)). As such, "[t]he Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." Id. Further, although "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment . . . [they] may be probative of the non-existence of a factual dispute when . . . they demonstrate a basic agreement concerning what legal theories and

material facts are dispositive." United States v. Oakley, 744 F.2d 1553, 1555-56 (11th Cir. 1984) (quoting Bricklayers Int'l Union, Loc. 15 v. Stuart Plastering Co., 512 F.2d 1017, 1023 (5th Cir. 1975)).

## III. DISCUSSION

Plaintiff contends that she is entitled to summary judgment on her claims for breach of contract (Count I) and prejudgment interest (Count VI), or alternatively, for quantum merit (Count II), and unjust enrichment (Count III). Pl.'s Mem. of Law in Supp. of her Renewed Mot. for Summ. J. ("Pl.'s Br.") [Doc. 32-1] at 1-2, 5-16. Defendant contends that it is entitled to summary judgment on all of Plaintiff's claims. Def.'s Br. in Supp. of its Mot. for Summ. J. ("Def.'s Br.") [Doc. 34-1] at 2-3, 9-24.

### A. Breach of Contract (Count I)

The elements of a breach of contract in Georgia are (1) a valid contract, (2) a material breach of the contract, and (3) damages suffered by the claimant. Pinder v. John Marshall Law Sch., LLC, 11 F. Supp. 3d 1208, 1233 (N.D. Ga. 2014). "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1. The party asserting the existence of a contract has the burden of proving its existence

and its terms. Torres v. Elkin, 317 Ga. App. 135, 141 (2012). Pursuant to Georgia law, "[a]n oral promise as to an employment contract for an indefinite period of time is not enforceable." Ford Clinic, Inc. v. Potter, 246 Ga. App. 320, 322 (2000). An oral employment contract is terminable at will and a violation of its terms will not support a breach of contract claim. Pickle Logging, Inc. v. Georgia Pac. Corp., 276 Ga. App. 398, 400 (2005) (citation omitted).

Plaintiff asserts a claim for breach of contract based on a "renegotiated employment agreement" where she "was only required to work 4 out of 5 days each week, in exchange for a 20% pay reduction." Am. Compl. ¶ 23. Plaintiff contends Defendant breached the agreement by requiring her to work five days each week while failing to pay her for the fifth day of work she performed each week for six years. Id. ¶¶ 24-25. Despite the fact that her agreement with Cohen was verbal and had no limitation as to time, Plaintiff contends that she is entitled to summary judgment on her breach of contract claim because the January 29, 2018, email exchange she had with Bell constituted a written memorialization of the earlier oral agreement with Cohen. Pl.'s Br. at 2, 5-7. Defendant disagrees with Plaintiff's characterization of the email exchange, primarily arguing that there is no indication of any mutual assent on the part of Defendant to the prior oral agreement between Plaintiff and Cohen. Def.'s Resp. in Opp'n to Pl.'s Renewed

Mot. for Partial Summ. J. [Doc. 36] at 2-4. With respect to its own motion, Defendant asserts that it is entitled to summary judgment on the breach of contract claim because the alleged oral employment agreement was for indefinite period of time and "[u]nder Georgia law, an oral promise as to an employment contract for an indefinite period of time is not enforceable. Such contract is terminable at will, and violation of its terms will not support a breach of contract claim." Def.'s Br. at 10-11 (quoting Crawford v. Scott, 368 Ga. App. 249, 253 (2023)). Plaintiff responds by arguing, inter alia, that Defendant's argument is misplaced and legally incorrect because her case is based upon a written agreement. Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Resp.") [Doc. 40] at 7-8.

"[U]nless and until there is the mutual assent of the parties to all essential terms, there is no complete and enforceable contract." Extremity Healthcare, Inc. v. Access To Care Am., LLC, 339 Ga. App. 246, 251 (2016) (citation omitted).

> It is well established that no contract exists until all essential terms have been agreed to, and the failure to agree to even one essential term means that there is no agreement to be enforced. If a contract fails to establish an essential term, and leaves the settling of that term to be agreed upon later by the parties to the contract, the contract is deemed an unenforceable "agreement to agree."

Hardnett v. Ogundele, 291 Ga. App. 241, 243 (2008) (citation omitted). "Under O.C.G.A. § 13-3-1, the plaintiff in a breach of contract action has the burden of proving three elements: subject matter of the contract, consideration, and mutual

assent by all parties to all contract terms." Lifestyle Family, L.P. v. Lawyers Title Ins. Corp., 256 Ga. App. 305, 309 n.3 (2002); Johnson v. Univ. Health Servs., Inc., 931 F. Supp. 1572, 1581 (S.D. Ga. 1996), aff'd, 161 F.3d 1334 (11th Cir. 1998) ("A party seeking to enforce a contract bears the burden of proving all of these essential elements of the contract and that the opposing party assented to all essential terms.").

> In determining if parties had the mutual assent or meeting of the minds necessary to reach agreement, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent.

Cox Broad. Corp. v. Nat'l Collegiate Athletic Ass'n, 250 Ga. 391, 395 (1982). In making the mutual assent determination, "the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence." Frickey v. Jones, 280 Ga. 573, 575 (2006) (quoting Cox Broad., 250 Ga. at 395). "Where such extrinsic evidence exists and is disputed, the question of whether a party has assented to the contract is generally a matter for the jury." Legg v. Stovall Tire & Marine, Inc., 245 Ga. App. 594, 596 (2000).

In this case, whether the Court considers the evidence in the light most favorable to Plaintiff (in considering Defendant's Motion for Summary Judgment) or in the light most favorable to Defendant (in considering Plaintiff's Motion for Partial Summary Judgment), one thing is clear: The January 29, 2018, email exchange between Plaintiff and Bell does not constitute a formal written agreement signed by the parties nor does it establish the existence of the terms of an employment agreement. The email did relate to the earlier conversations Plaintiff had with Cohen about a purported agreement as to a pay cut and a day off each week, but the purpose of the email was seeking direction as to whether she could work from home one or two days (which was not a term of the verbal agreement). Bell responded by directing her to speak with Cohen. Bell never acknowledged the prior oral agreement, consented to the terms of the oral agreement, nor agreed to the terms of any employment contract. Because the oral employment agreement between Plaintiff and Cohen had no definitive end date, it cannot be enforced in a breach of contact action, and Plaintiff presents no evidence of a subsequent agreement in writing where Defendant assented to its terms. See Crawford, 368 Ga. App. at 253.

Consequently, Plaintiff's renewed Motion for Partial Summary Judgment as to the breach of contract claim (Count I) is **DENIED**, and Defendant's Motion for Summary Judgment as to the same claim is **GRANTED**.[5]

**B. Quantum Meruit and Unjust Enrichment (Counts II and III)**

Plaintiff asserts alternative claims for quantum meruit and unjust enrichment "to the extent there is not an enforceable contract." Pl.'s Br.at 11-16; Am. Compl. ¶¶ 26-41. The parties each contend that they are entitled to summary judgment on these claims. Pl.'s Br.at 11-16; Def.'s Br. at 12-18. Among other arguments,

---

[5] In Count VI, Plaintiff seeks "prejudgment interest against MarkeTeam based on the liquidated backpay damages owed to her due to MarkeTeam's breach of their employment agreement." Pl.'s Br. at 9. Plaintiff's claim for prejudgment interest is pursuant to O.C.G.A. § 7-4-15 and "[u]nder this statute, prejudgment interest—which flows automatically from a liquidated demand—is to be awarded upon a judgment for a liquidated amount." Crisler v. Haugabook, 290 Ga. 863, 864 (2012). However, this Court has denied Plaintiff's Motion for Partial Summary Judgment on her breach of contract claim. Without a judgment to support her claim for prejudgment interest, Plaintiff's Motion for Partial Summary Judgment on prejudgment interest also fails. See Cooney v. Burnham, 283 Ga. 134, 137 (2008) (holding that a claim for prejudgment interest is wholly dependent on the underlying liability). Accordingly, Plaintiff's Renewed Motion for Partial Summary Judgment on her claim for prejudgment interest (Count VI) is also **DENIED**, and Defendant's Motion for Summary Judgment as to the same claim is **GRANTED**.

Furthermore, because the Court is granting Defendant's Motion for Summary Judgment on the breach of contract claim holding there is no enforceable contract, the Court need not consider Defendant's alternative argument that Plaintiff waived her right to enforce the contract.

Defendant asserts that the statutes of limitation for quantum meruit and unjust enrichment are both four years in Georgia. Def.'s Br. at 16 n.5 (citing O.C.G.A. § 9-3-25 and § 9-3-26).[6]

Plaintiff's claims for quantum meruit and unjust enrichment are subject to the four-year limitation period established by O.C.G.A. § 9-3-26. See Jysk Bed'N Linen v. Dutta-Roy, 787 F. App'x 608, 612 (11th Cir. 2019) (citing O.C.G.A. § 9-3-26 and holding that the statute of limitations on claims for quantum meruit and unjust enrichment is four years); Abdulla v. Chaudhary, CV 114-008, 2015 WL 4477824, at *7 (S.D. Ga. July 21, 2015) ("The statute of limitations for a claim based upon quantum meruit is four years."); Koncul Enterprises, Inc. v. Fleet Fin., Inc., 279 Ga. App. 39, 42 (2006) (noting that the statute of limitations for unjust enrichment is four years, citing O.C.G.A. § 9-3-26).

Both quantum meruit and unjust enrichment claims are quasi-contractual in nature and "accrue on the date that suit on the claim can first be brought, which is usually when a plaintiff confers a benefit on the defendant (unjust enrichment) or performs a valuable service for the defendant (quantum meruit) without

[6] Plaintiff's failure to respond to this argument renders it unopposed. See Kramer v. Gwinnett Cnty., 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed").

compensation." Posada v. Parker Promotions, Inc., No. 4:22-CV-121 (CDL), 2023 WL 3295172, at *3 (M.D. Ga. May 5, 2023); see also Thierry v. Honey Pot Co. (DE), LLC, 23-12083, 2024 WL 3983400, at *6 (11th Cir. Aug. 29, 2024), cert. denied, 145 S. Ct. 2826 (2025) (internal quotation and citation omitted) ("Just as with his breach of contract claim, the date of accrual for an unjust enrichment claim is the time when the plaintiff could first have maintained his action to a successful result, not necessarily at the time the benefits were conferred.").

Viewed in a light most favorable to Plaintiff, the evidence in this case demonstrates that Plaintiff "performed valuable services, MarkeTeam accepted those services, . . . and Mrs. Hall expected to be compensated for her work." Pl.'s Br. at 11-14 (citing record evidence). Similarly, viewed in a light most favorable to Plaintiff, the evidence in this case demonstrates that Plaintiff conferred a benefit to Defendant which Defendant accepted. Id. at 14-16 (citing record evidence). Further, to the extent Plaintiff conferred a benefit to, or performed valuable services for Defendant, it is undisputed that it began "regularly" in January 2018 when Plaintiff "worked five days a week from January 2018 to December 2023." Def.'s Resp. to Pl.'s AMF ¶¶ 2-3.

Accordingly, the evidence viewed in a light most favorable to Plaintiff demonstrates that Plaintiff's claims for quantum meruit and unjust enrichment

accrued by the end of 2018 at the latest (a full year into the period where the evidence, viewed in a light most favorable to Plaintiff, demonstrates that she had regularly worked Wednesdays without compensation). However, Plaintiff did not file the above-styled lawsuit until March 1, 2024, well outside the statute of limitations. Because Plaintiff failed to file her claims for quantum meruit and unjust enrichment within the prescribed period, those claims are time-barred by the statute of limitations in O.C.G.A. § 9-3-26.

Accordingly, Plaintiff's renewed Motion for Partial Summary Judgment as to the quantum meruit claim (Count II) and unjust enrichment claim (Count III) is **DENIED**, and Defendant's Motion for Summary Judgment as to the same claims is **GRANTED**.

### C. Discrimination Under the ADEA (Count IV)

Plaintiff asserts a claim for unlawful discrimination under the ADEA based on allegations that Defendant terminated her employment based on her age. Am. Compl. ¶¶ 42-47.

#### 1. Legal framework for claims under the ADEA

The ADEA, which applies to individuals who are least forty years of age, makes it unlawful for an employer "to discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1). Under the ADEA, a plaintiff "bears the ultimate burden of proving that age was a determining factor" in the employment decision at issue. Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs, 512 F.3d 1296, 1300 (11th Cir. 2008) (quoting Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989)). An ADEA plaintiff can establish a prima facie case of age discrimination through direct evidence or through circumstantial evidence under a variation of the burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Carter, 870 F.2d at 581.

**a. Direct Evidence of Discrimination**

Direct evidence of discrimination is "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Wilson v. B/E Aero., Inc., 376 F.3d 1079, 1086, (11th Cir. 2004) (citation and quotation omitted). Because "not every comment concerning a person's age presents direct evidence of discrimination," courts have found "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, to constitute direct evidence of discrimination." Carter, 870 F.2d at 582 (citation omitted). "[R]emarks merely referring to characteristics associated with increasing age, or facially neutral comments from

which a plaintiff has inferred discriminatory intent, are not directly probative of discrimination." Id. (citation omitted). If Plaintiff presents direct evidence of a discriminatory act, Defendant must prove that the same employment decision would have been made absent any discriminatory intent. Id. at 581.

**b. Circumstantial Evidence of Discrimination**

When a plaintiff presents only circumstantial evidence, however, the Court must apply a variation of the four-part McDonnell Douglas Title VII analysis and may infer discrimination only if the plaintiff makes out a prima facie case and then shows that any nondiscriminatory reasons the employer proffers in rebuttal are merely pretext for discriminatory behavior. Humphrey v. Napolitano, 517 F. App'x. 705, 708 (11th Cir. 2013) (noting that the Eleventh Circuit applied the McDonnell Douglas test in the context of ADEA claims based on circumstantial evidence despite the fact that the Supreme Court "has not definitively decided whether the evidentiary framework of McDonnell Douglas . . . is appropriate in the ADEA context.") (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 175 n.2 (2009)).

Under the McDonnell Douglas framework, to establish a prima facie case of age discrimination in the context of termination of employment, a plaintiff must show that she (1) belonged to a protected class; (2) was qualified for her position;

(3) was subject to an adverse employment action; and (4) was treated less favorably than similarly situated individuals outside her protected class. Id. Once the plaintiff has made out a prima facie case, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for its employment decision. Usry v. Liberty Reg'l Med. Ctr., Inc., 560 F. App'x 883, 887 (11th Cir. 2014). The employer meets its burden of production when it offers admissible evidence of a legitimate, nondiscriminatory reason for the adverse employment action. Kragor v. Takeda Pharms. Am., Inc., 702 F.3d 1304, 1308 (11th Cir. 2012). The employer's burden is one of production, not persuasion and, as such, the employer "need not persuade the court that it was actually motivated by the proffered reasons, . . . [i]t is sufficient if the employer's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Id. at 887-888 (citation and internal quotations omitted).

If the employer meets this burden of production, the inference of discrimination drops from the case, and the plaintiff then must show by a preponderance of the evidence that the employer's proffered reasons were a pretext for unlawful discrimination. Usry, 560 F. App'x at 888; Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 767-688 (11th Cir. 2005). In order to show pretext, the plaintiff must "demonstrate that the proffered reason was not the true reason for the

employment decision." Usry, 560 F. App'x at 888. "A plaintiff may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. (quotation and citation omitted). Under this analysis, a plaintiff survives summary judgment by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable. Id. "The plaintiff must show weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's rationale." Holland v. Gee, 677 F.3d 1047, 1055-56 (11th Cir. 2012) (quotation and citation omitted). In evaluating plaintiff's pretext evidence at the summary judgment stage, "[t]he district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal quotations and citations omitted).

**2. Analysis**

Defendant argues that it is entitled to summary judgment on Plaintiff's ADEA claim because (1) Plaintiff cannot establish a prima facie case of age

discrimination and (2) assuming arguendo that she can make a prima facie showing, there is no evidence that the Defendant's articulated nondiscriminatory reason for terminating her (her position was eliminated) is a pretext for age discrimination. Def.'s Br. at 18-24.

### a. Prima facie case

Defendant argues that Plaintiff cannot show she was treated less favorably than others outside her protected class because the two similarly situated individuals identified by Plaintiff are over 40 and there is no evidence she was replaced by someone younger than 40 years old. Def.'s Br. at 21. In her deposition, Plaintiff testified that "project manager" is the name of the position at Defendant for those who perform what were Plaintiff's old job duties as Senior Production Manager. Hall Dep. at 49-50. Plaintiff identified Abby Davy ("Davy") and Abigail Williams ("Williams") who took the role of project manager when she was terminated. Id. at 50. Plaintiff argues Davy was 45 and Williams was 48 at the time she was terminated. Pl.'s Resp. at 13. Plaintiff states that "[a]t the time of my termination in December 2023, both [Davy and Williams] were younger than me and younger than all employees in my department who were laid off, all of whom were 50 or older at the time." Fourth Decl. of Anna Hall (Nov. 23, 2025) ("Fourth Hall Decl.") [Doc. 41-1] ¶ 7. Plaintiff argues that in order to make out a

prima facie case of age discrimination under the ADEA she does not have to identify a "similarly situated individual" over the age of 40. Pl.'s Resp. at 12-13. Plaintiff is correct.

> The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out because of his age. Or to put the point more concretely, there can be no greater inference of age discrimination (as opposed to "40 or over" discrimination) when a 40-year-old is replaced by a 39-year-old than when a 56-year-old is replaced by a 40-year-old. Because it lacks probative value, the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the McDonnell Douglas prima facie case.

O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996). The Supreme Court stated that "[b]ecause the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." Id., 517 U.S. at 313 (emphasis added). Elaborating on how many years was "substantially younger," the Eleventh Circuit has held that "a replacement who is only three years younger is sufficient to establish a prima facie case." Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1360 (11th Cir. 1999) (citing Carter v. DecisionOne Corp., 122 F.3d 997, 1003 (11th Cir.1997) (holding that

plaintiff aged 42, who was replaced by employee aged 39, met the "substantially younger" replacement requirement under ADEA).

Viewing the evidence in a light most favorable to Plaintiff, Plaintiff has presented evidence that at least two similarly situated individuals who were 45 and 48 at the time she was terminated took her position.[7] Plaintiff was born in 1973, Hall Dep. at 8, which would make her approximately 50 at the time of her termination. Because at least one of the similarly situated individuals is substantially younger (four or five years) than Plaintiff, the Court finds that Plaintiff has met her burden of showing a prima facie ADEA case.

The Court now turns to Defendant's reason for Plaintiff's termination to determine whether it is a pretext for unlawful discrimination.

**b. Legitimate nondiscriminatory reason for termination or pretext**

Defendant argues that it was acquired by Innovairre Communications ("Innovairre") in 2021 and that a year after the acquisition, Innovairre began

[7] To the extent Defendant disputes the age of Davy and Williams, see Decl. of Tracy Maloy (Oct. 28, 2025) ("Maloy Decl.") [Doc. 34-4] ¶¶ 19-20 (indicating that they were 46 and 49 at the time of Plaintiff's termination), this is a fact issue that the Court cannot resolve on summary judgment. However, even if the Court credited Defendant's evidence, at least one of these individuals would have been "substantially younger" than Plaintiff at the time of her termination.

having conversations with Defendant about ways to become more profitable. Def.'s Br. at 22-23 (citing Maloy Decl. ¶ 11).[8] They observed that Innovairre already had a centralized global management department that "performed most of the duties" that "were being performed by [Defendant's] Production Services department." Id. ¶ 13. "Those duties included requesting and evaluating quotes, determining production vendors, coordinating artwork to ensure alignment with printing specifications, coordinating printing schedules, communicating with internal and external vendors, assuring production is completed accurately with proper quantity and costs and on-time, and communicating any production issues to Account Managers." Id. ¶ 14. Because of the redundancy between Innovairre's existing global management department and Plaintiff's position, Plaintiff was notified on December 11, 2023, that she would be terminated. Id. ¶¶ 15-16; see also DSMF ¶ 11 ("After the acquisition, Jeff Huberty—MarkeTeam's then-President—and Innovairre sought to restructure MarkeTeam by eliminating the Production Services department because Innovairre already had a Global Management Department performing the same duties."). The Court finds that Defendant has articulated a legitimate, nondiscriminatory reason for terminating

---

[8] Maloy is the Senior Vice President of Human Resources at Innovairre. Maloy Decl. ¶ 4.

Plaintiff. See Usry, 560 F. App'x at 888; see also Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 248 (1981) ("The defendant need not persuade the court that it was actually motivated by the proffered reasons, but it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.").

Upon presentation of the nondiscriminatory reason for Plaintiff's termination, the burden shifts back to Plaintiff to raise a genuine factual question as to whether Defendant's stated reason (removal of redundant/duplicative positions) is mere pretext for discrimination, which Plaintiff can accomplish "by directly persuading the court at trial that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 920 (11th Cir. 1993).[9] Among other reasons, Plaintiff argues that Defendant's proffered reason was pretext for discrimination because

---

[9] "[O]nce the employer offers evidence of a legitimate, nondiscriminatory reason for the adverse action, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [i]s discrimination vel non." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142-43 (2000) (citations and internal quotation marks omitted). The opportunity provided to a plaintiff to show pretext is simply an opportunity to present evidence from which the trier of fact can find unlawful discrimination." Kragor, 702 F.3d at 1308.

(1) Defendant's explanation that the duties she performed were redundant of an already existing position in Innovairre's global management department is inconsistent with Defendant's actual employment structure pre-termination, and (2) evidence that the three employees in Plaintiff's department who were terminated were all over 50 years of age supports an inference that she was fired because of her age. Pl.'s Resp. at 14-18.

Plaintiff takes issue with "Defendant's representation that Davy and Williams performed Plaintiff's role when she was terminated." Pl.'s Resp. at 14. Plaintiff contends that this is not consistent with Defendant's pre-termination employment structure. Specifically, Plaintiff states:

> Defendant asserts that Abbey Davy and Abigail Williams were Senior Project Managers in Innovairre's Global Management Department performing the same duties as my role at the time I was terminated. That is incorrect.
>
> At the time of my termination, both Abbey Davy and Abigail Williams were employed by MarkeTeam—not Innovairre. I know this based on my day-to-day work with them, reporting structure, internal communications, and the fact that their work remained within MarkeTeam's project -management structure.
>
> Neither Davy nor Williams ever performed the job duties performed by me or the other members of the Production Services Department who were laid off. Their job was project management, operating as intermediaries between our Production Services Department and the Account Management Department.

> I recruited Abbey Davy to MarkeTeam and I have personal knowledge of both Davy's and Williams' project-management roles. They never performed the production-management, vendor-coordination, or print-production duties assigned to me and the rest of my department.
> ***
> The implication that Davy and Williams performed the duties I did is incorrect. Davy's and Williams' responsibilities were more aligned with the Account Management Department and were not equivalent to Production Services Department, which involved vendor negotiations, production scheduling, coordinating print specifications, managing proofs, and monitoring print accuracy and completion timelines.

Fourth Hall Decl. ¶¶ 3-6, 8. Defendant "does not dispute that Davy and Williams worked with Hall at MarkeTeam prior to Hall's termination" and clarifies that these two employees "replaced Hall—specifically, they absorbed Hall's job duties when they were moved from MarkeTeam to Innovairre's Global Management department after Hall's termination." Def.'s Reply at 12.

Defendant's stated nondiscriminatory reason for terminating Plaintiff was "because her department was redundant following Innovairre's purchase of the company." Pl.'s Reply at 22 (citing Maloy Decl. ¶¶ 7-13). "Specifically," Defendant determined that Innovairre's "Global Management department . . . was performing many of the duties that MarkeTeam's Production Services department was performing." Id. (citing Maloy Decl. ¶¶ 12-13). Plaintiff was terminated "[b]ecause of this redundancy in services." Id. (citing Maloy Decl. ¶ 15). It follows that if it was determined that Plaintiff's position was "redundant" of a

position that Innovairre's Global Management department already "was performing," Defendant would have identified the individual(s) from Innovairre's Global Management department that was performing those duties. Defendant did not do so. Instead, Defendant identified two individuals who prior to Plaintiff's termination worked for MarkeTeam and who Plaintiff contends did not perform the work she performed: their work "more aligned with the Account Management Department" than production services. Fourth Hall Decl. ¶ 8. Viewing this evidence in a light most favorable to Plaintiff, a reasonable juror could conclude that Defendant's non-discriminatory redundancy explanation is false, especially when taken in conjunction with Defendant's failure to identify an individual from Innovairre's Global Management department that occupied Plaintiff's purportedly redundant position.[10]

Plaintiff also points to the fact that she was one of three employees from her Production Services Department, all over 50 years old, who were terminated. Pl.'s

---

[10] Because the Court finds that the evidence viewed in a light most favorable to Plaintiff is sufficient for a jury to find that Defendant intentionally discriminated against Plaintiff, the Court need not address the "convincing mosaic" argument raised in Defendant's supplemental briefing. <u>See</u> Def.'s Notice of Suppl. Authority [Doc. 46] (citing <u>Ismael v. Roundtree</u>, 161 F.4th 752, 761-62 (11th Cir. 2025) ("[A]t summary judgment, we ask only one question: whether there is sufficient evidentiary basis for the jury to find that the defendant intentionally discriminated against the plaintiff.")).

Resp. at 13 (citing Fourth Hall Decl. ¶ 7).[11] Plaintiff contends that based on this evidence a reasonable juror could that Defendant's "restructuring rationale was selectively applied, targeting older employees rather than roles truly made redundant." Pl.'s Resp. at 16. Defendant's failure to address this argument indicates that it is unopposed. Kramer, 306 F. Supp. 2d at 1221. The evidence that Plaintiff was one of three employees fired from the Production Services Department and all were over 50 is probative circumstantial evidence of age discrimination. Damon, 196 F.3d at 1361 ("While not direct evidence of discriminatory animus, we believe that this pattern of firing and demoting so many older workers and replacing them with younger workers, by the relevant decision-maker during the same time period, constitutes probative circumstantial evidence of age discrimination.").

Viewing the evidence in a light most favorable to Plaintiff, the Court finds that the evidence presented by Plaintiff raises a disputed issue of material fact as to

[11] Although Plaintiff's argument indicates that there were two additional employees over 50 years old who were terminated, Plaintiff does not identify those individuals or give a date for their termination. Additionally, Plaintiff's declaration cited in support of this point does not indicate that were three total terminations and instead just states that "all employees in my department who were laid off, all of whom were 50 or older at the time." Fourth Hall Decl. ¶ 7.

whether Defendant's stated reason for its decision was a mere pretext for age discrimination.

> The burden to avoid summary judgment is not to show by a preponderance of the evidence that the reasons stated were pretext. Rather, plaintiff's burden at summary judgment is met by introducing evidence that could form the basis for a finding of facts, which when taken in the light most favorable to the non-moving party, could allow a jury to find by a preponderance of the evidence that the plaintiff has established pretext . . . . Issues of fact and sufficiency of evidence are properly reserved for the jury. The only issue to be considered by the judge at summary judgment is whether the plaintiff's evidence has placed material facts at issue.

Hairston, 9 F.3d at 921. This Court is also mindful that in discrimination cases, "an employer's true motivations are particularly difficult to ascertain, thereby making such factual determinations generally unsuitable for disposition at the summary judgment stage." Id. 9 F.3d at 920-21.

Accordingly, Defendant's Motion for Partial Summary Judgment on Plaintiff's ADEA claims is **DENIED**.

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED** that Plaintiff's Renewed Motion for Partial Summary Judgment [Doc. 32] is **DENIED**. It is further **ORDERED** that Defendant's Motion for Summary Judgment [Doc. 34] is **GRANTED IN PART**

**AND DENIED IN PART.** Plaintiff's claims in Counts I-III are dismissed. Defendant's Motion is otherwise **DENIED.**

It is further **ORDERED** that the parties shall file their proposed Consolidated Pretrial Order with respect to the remaining ADEA claim in this case within thirty (30) days of this Order. See LR 16.4. NDGa.; Standing Order Regarding Civil Litigation [Doc. 5] at 19. The parties are **DIRECTED** to inform this Court within fourteen (14) days of this Order whether this case should be referred to a Magistrate Judge of the Northern District for mediation.

**IT IS SO ORDERED** this 21st day of August, 2026.

Mark H. Cohen

MARK H. COHEN
United States District Judge